IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BENJAMIN MEINE, individually and on behalf of similarly situated persons, | § § § | |
| Plaintiff, | § § | Civil No. 3:23-CV-00968-K |
| v. | § § | |
| TCHDALLAS2, LLC d/b/a TEXAS CARD HOUSE, RYAN CROW, and VICTOR LEONE, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Benjamin Meine's Motion for FLSA Certification and Notice to Putative Class Members (the "Motion to Certify") and Brief in support thereof, Doc. Nos. 29–30, Defendants TCHDallas2, LLC d/b/a Texas Card House ("TCH"), Ryan Crow, and Victor Leone's Response in Opposition to Plaintiff's Motion for FLSA Certification and Notice to Putative Class Members and Brief in support thereof, Doc. Nos. 41–42, Mr. Meine's Reply in Support of Plaintiff's Motion for FLSA Certification and Notice to Putative Class Members and Brief in support thereof, Doc. Nos. 45–46, Mr. Meine and Opt-In Plaintiff Michael Guadalupe's Motion to Toll Statute of Limitations (the "Motion to Toll") and Brief in support thereof, Doc. Nos. 31–32, Defendants' Response in Opposition to Messrs. Meine and Guadalupe's Motion to Toll Statute of Limitations and Brief in support thereof, Doc. Nos. 39–40, and

1

Mr. Meine's Reply in Further Support of Messrs. Meine and Guadalupe's Motion to Toll Statute of Limitations and Brief in support thereof.  Doc. Nos. 47–48.

Upon consideration of the parties' submissions, the Court **GRANTS** Benjamin Meine's Motion to Certify a Fair Labor Standards Act ("FLSA") collective action against his employer, TCH.  Mr. Meine and Michael Guadalupe were card dealers at a Dallas poker club run by TCH.  For a little over two years, TCH required Messrs. Meine and Guadalupe and their fellow card dealers to pool their tips with floor managers at the club.  Mr. Meine claims that this violated the FLSA's prohibition on tip pools that redistribute tips to managers, supervisors, and employees who do not customarily and regularly receive tips from other employees who receive the tips.  Because the Court finds that the card dealers subject to TCH's redistributive tip policy are similarly situated, the Court certifies the card dealers as a collective.  The Court approves Mr. Meine's plan for providing the dealers with notice of this action and obtaining their consent to join the action with several modifications.  The Court then **DENIES** Messrs. Meine and Guadalupe's separate Motion to Toll the statute of limitations for all potential dealer plaintiffs on equitable grounds.  The record does not reveal any extraordinary circumstances that would justify collective-wide equitable tolling at this time.

## I.    BACKGROUND

Around October of 2020, TCH opened a private poker club in Dallas.  Doc. No. 42 at 24.  By paying dues, members can access the club's poker tables, which TCH staffs with card dealers.  *Id.*  Referees, called "floor managers," walk among the tables

and resolve disputes that arise over poker rules.  *Id.*  These floor managers are not necessarily specialists.  Although TCH distinguishes hours worked as a floor manager from hours worked in other roles, both card dealers and ordinary administrators often serve shifts as floor managers.  *Id.* at 25–26.  Like dealers, floor managers sometimes receive tips from the customers they serve.  *Id.* at 26.

For over two years, TCH regulated tips under a policy that is at the heart of this case.  *Id.*  At the end of their shifts, dealers had to contribute twelve percent of their tips to a pool.  *Id.*  TCH distributed the pooled tips to dealers and floor managers at the end of each of pay period.  *Id.*; Doc. No. 30-2 at 2–3; Doc. No. 30-3 at 2; Doc. No. 18-6 at 1–3.  This arrangement ended on December 24, 2022, when TCH removed floor managers from the tip pool.  Doc. No. 40 at 26; Doc. No. 18-6 at 1–2.

A little over five months later, one card dealer, Benjamin Meine, filed this putative collective action against TCH and its CEO, Ryan Crow, alleging that TCH violated the FLSA by allowing floor managers to participate in the tip pool with dealers.  Doc. No. 1 at 6–7.  Defendants moved to dismiss Mr. Meine's claims, and he responded by amending his complaint.  Doc. Nos. 12, 18.  The amended complaint, which is Mr. Meine's live pleading, asserts a revised version of the same FLSA claim and names an additional Defendant: former TCH General Manager and now-COO Victor Leone.  Doc. No. 18.  One of Mr. Meine's fellow dealers, Michael Guadalupe, consented to join this action after the filing of the amended complaint. Doc. No. 24; Doc. No. 24-1.

3

On September 11, 2023, Mr. Meine moved to certify a collective composed of "[a]ll card dealers employed by TCHDallas2, LLC d/b/a Texas Card House Dallas at any time from May 3, 2020 to December 24, 2022, who were subject to TCH Dallas' mandatory tip pool." Doc. No. 29 at 1.  Messrs. Meine and Guadalupe simultaneously moved to equitably toll the statute of limitations for the proposed collective.  Doc. No. 31.  The Court now grants the first motion and denies the second.

## II.   LEGAL STANDARD

An employee may sue his employer under the FLSA "for and in behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  Similarly situated employees can join such a "collective action" only by affirmatively opting into it.  *Id.* To facilitate the collective action, the Court may authorize a party to send notice of the proceeding to the group, or "collective," of potential plaintiffs.  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–71 (1989).  This approval of notice sometimes goes by the name "certification."  Since the parties use this name, the Court adopts it for present purposes.  Unlike class certification, this type of certification under the FLSA "does not produce a class with an independent legal status, or join additional parties to the action."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

Before it may certify a collective action, the Court "must rigorously scrutinize the realm of 'similarly situated' workers," determine that the proposed notice of the action "will go to those who are actually similar to the named plaintiffs," and ensure that the notice does not "signal approval of the merits" of the collective action "or

4

otherwise stir up litigation." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021). "To decide whether a group of employees is similarly situated, the [Court] must consider whether merits questions can be answered collectively." *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023) (citation and internal quotation marks omitted). The named plaintiff has the burden of establishing that members of his proposed collective are similarly situated. *Id.*

"Considering, early in the case, whether merits questions can be answered collectively has nothing to do with endorsing the merits." *Swales*, 985 F.3d at 442. While the Court must resolve threshold issues material to certification, the Court does not resolve other merits issues that remain after it has found that the putative members of a collective are or are not similarly situated. *See id.* at 441–42; *T.S. v. Burke Found.*, 521 F. Supp. 3d 691, 698 (W.D. Tex. 2021). Even the resolution of a threshold issue intertwined with a merits question "is not a resolution of the merits question itself" because the Court asks only "whether the merits question may be answered on a collective basis." *Klick v. Cenikor Found.*, 94 F.4th 362, 368 (5th Cir. 2024).

## III. DISCUSSION

The Court begins its discussion with Mr. Meine's Motion to Certify a collective composed of card dealers at TCH's Dallas club, which the Court grants in the next subsection. In the subsection following, the Court modifies Mr. Meine's plan for notifying potential dealer plaintiffs of this action and obtaining their consent to join it.

The Court concludes its discussion in a third subsection by denying Messrs. Meine and Guadalupe's Motion to Toll the statute of limitations for the potential plaintiffs.

### A. Certification

The Court finds that Mr. Meine and members of his proposed collective of card dealers are similarly situated, so the Court certifies the collective. After modifying the collective's definition slightly, the Court reviews the similarities among its members.

### 1. Collective Definition

The collective Mr. Meine's moves to certify comprises "[a]ll card dealers employed by TCHDallas2, LLC d/b/a Texas Card House Dallas at any time from May 3, 2020 to December 24, 2022, who were subject to TCH Dallas' mandatory tip pool." Doc. No. 29 at 1. This collective is somewhat overbroad.

After Mr. Meine moved for certification, Defendants submitted evidence that TCH did not open its Dallas club until October 2020. Doc. No. 42 at 24. Defendants therefore assert, and Mr. Meine does not dispute, that the proposed May 3, 2020 start date for the collective action period is too early. The Court agrees and changes the start date from May 3, 2020 to October 1, 2020.

The Court will not make any further adjustments. Although some courts have held that the collective action period should begin on the earliest day within the statute of limitations period provided by the FLSA, no party requests a modification along these lines. *See Nguyen v. Versacom, LLC*, 2015 WL 1400564, at *9–10 (N.D. Tex. Mar. 27, 2015) (Fitzwater, J.). Since other courts disagree about the proper start date for a

collective action period, *see id.*, the Court declines to conform the collective action period to the limitations period *sua sponte*.

### 2. Similarity

With Mr. Meine's proposed collective defined, the Court finds that its members are similarly situated and certifies the collective.

An understanding of the proposed collective claim in this case is necessary to appreciate the similarities among the potential card dealer plaintiffs. Mr. Meine asserts that TCH improperly redistributed tips from dealers to floor managers. *See* Doc. No. 18 ¶¶ 65–66. This claim derives from the FLSA's minimum wage requirements. Under the FLSA, a covered employer may pay a tipped employee $2.13 per hour instead of the ordinary federal minimum wage of $7.25 per hour "as long as the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). The employer may benefit from this rule only if it adopts one of two tip redistribution policies: (1) allowing the employee to retain all tips he receives or (2) pooling tips among employees who "customarily and regularly" receive tips. 29 U.S.C. § 203(m)(2)(A). In neither case may the employer or its "managers or supervisors" keep any portion of the employee's tips. *Id.* § 203(m)(2)(B). Mr. Meine claims that TCH violated these rules by putting floor managers in a tip pool with card dealers. According to Mr. Meine, floor managers are "managers or supervisors" and do not "customarily and regularly" receive tips. Doc. No. 18 ¶¶ 46–48.

The same or nearly the same facts will dispose of such tip pool claims for Mr. Meine and his proposed collective alike.  First, potential card dealer plaintiffs who assert the same claim as Mr. Meine will likewise succeed or fail in their claims depending on whether floor managers are managers, supervisors, or employees who do not customarily and regularly receive tips.  All potential plaintiffs were card dealers at TCH's Dallas club who received the lesser "tipped minimum wage" rather than the ordinary federal minimum wage.  Doc. No. 21 ¶ 40; Doc. No. 30 at 1; Doc. No. 30-2 at 3; Doc. No. 30-3 at 2.  Because of their positions, all were also members of the same mandatory tip pool.  Doc. No. 42 at 26.  That pool included floor managers during the proposed collective action period.  Doc. No. 30-2 at 2; Doc. No. 30-3 at 2; Doc. No. 42 at 10; Doc. No. 18-6 at 1–3.  If the floor managers were managers, supervisors, or employees who do not customarily and regularly receive tips, then they were ineligible to participate in the tip pool with dealers, and the dealers in the pool have valid claims. If the floor managers were not managers, supervisors, or employees who do not customarily and regularly receive tips, then they were eligible to participate in the tip pool, and the dealers in the pool have no valid claims.

Second, the facts that determine floor managers' eligibility to participate in the tip pool will not vary much based on which dealer is asserting a claim.  It is unclear how much turnover occurred among floor managers, but floor managers had fairly uniform duties at the Dallas club.  Doc. No. 42 at 24–25.  Proof that these are or are not the duties of managers, supervisors, or employees who customarily and regularly receive

8

tips will therefore all but resolve each potential plaintiff's claim. Individual plaintiffs may need to prove damages separately, but this is likely to be a mechanical exercise, and no one suggests that it is a bar to certification. *See Barker v. ITL Foods, LP*, 2023 WL 5613409, at *6 (S.D. Tex. July 24, 2023), *rep. & rec. adopted*, 2023 WL 5615783 (S.D. Tex. Aug. 29, 2023). The Court accordingly joins other courts that have certified similar collectives asserting tip pool claims. *See, e.g.*, *Brixey v. McAdoo's Seafood Co.*, 2024 WL 57011, at *4 (W.D. Tex. Jan. 2, 2024); *Paschal v. Perry's Rests., Ltd.*, 2023 WL 2784864, at *3–4 (W.D. Tex. Apr. 4, 2023), *rep. & rec. adopted*, 2023 WL 3483902 (W.D. Tex. May 16, 2023); *Cortez v. Casa do Brasil*, LLC, 646 F. Supp. 3d 847, 855–56 (S.D. Tex. 2022); *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, 2022 WL 2119542, at *11 (E.D. Tex. June 13, 2022); *Bancroft v. 217 Bourbon, LLC*, 2022 WL 19762095, at *5 (E.D. La. Jan. 26, 2022).

Defendants' response is largely a misguided attempt to litigate the merits of the dealers' claims. Defendants purport to prove that floor managers were eligible to participate in the tip pool with dealers, but this is beside the point. Doc. No. 42 at 11–15. The Court is deciding whether the similarities among the dealers justify a collective proceeding, not whether the dealers have valid claims. *Brixey*, 2024 WL 57011, at *6; *Paschal*, 2023 WL 2784864, at *3; *Cortez*, 646 F. Supp. 3d at 856; *Garcia-Alvarez*, 2022 WL 2119542, at *11. The evidence underlying Defendants' argument is consistent with the Court's answer to the former question. It mostly consists of generalized facts about floor managers that relate to each dealer's potential tip pool claim in the same

way.  Doc. No. 42 at 24–31.  Representative is testimony that club "members . . . frequently give tips" to floor managers and that floor managers are "expected to provide customer service and ensure compliance with the rules of poker." *Id.* at 24–25.  If, as Defendants contend, these generalizations indicate that floor managers were proper tip pool participants, then they undermine all dealers' claims equally.

When Defendants address differences among the dealers, they have little to say. Defendants briefly suggest that there were variations among floor managers relevant to their tip pool eligibility, but there is no evidence for this.  Defendants simply speculate that floor managers "may" have carried out managerial tasks during some pay periods but not others.  *See id.* at 15.  The implication is that dealers who worked in certain pay periods have stronger claims than dealers who worked in other pay periods.  Missing is anything in the record allowing the intended inference.  Defendants fail to identify a single definite period in which a floor manager acted as an ordinary manager or even a single definite period in which no floor manager acted as an ordinary manager. The mere "possibility" that floor managers alternately exceeded and hewed to their briefs does not raise serious doubts about the similarity in the dealers' situations.  *Id.* at 25; *see Camara v. Mastro's Rests. LLC*, 340 F. Supp. 3d 46, 59 (D.D.C. 2018) (rejecting a similar argument about variations in tip pool participants), *aff'd*, 952 F.3d 372 (D.C. Cir. 2020).

### B. Identification, Notice, Consent

The Court now considers whether to modify Mr. Meine's proposed scheme for identifying members of the certified collective, notifying them of this suit, and obtaining their consent to participate in proceedings. Doc. No. 30-1. In outline, Mr. Meine seeks discovery of contact information for potential plaintiffs, asks for approval of notice and consent forms, and proposes to distribute these forms to potential plaintiffs by first class mail, email, text message, and a posting at TCH's Dallas club. Doc. No. 30 at 19. Defendants have urged several adjustments or additions to this scheme, and the parties have since narrowed the differences between their competing proposals. Doc. No. 42 at 16; Doc. No. 46 at 16 n.8. The Court therefore approves the unopposed portions of both parties' proposals and confines the discussion in this subsection to matters that remain in dispute or require clarification.

### 1. Identification of Potential Plaintiffs

The Court begins with discovery Mr. Meine seeks from Defendants to help him identify potential dealer plaintiffs. Defendants do not oppose producing dealers' contact information, but they do oppose Mr. Meine's request for the last four digits of the social security numbers of dealers who cannot be reached by mail. Doc. No. 30 at 17; Doc. No. 42 at 18.

The Court agrees that production of the partial social security numbers is unwarranted. Social security numbers are sensitive information. Courts certifying collective actions often refuse to compel their disclosure, either outright or until the named

plaintiff establishes his need for them. *E.g.*, *McDonald v. WorldPac, Inc.*, 2015 WL 12753533, at *5 (N.D. Tex. Sept. 8, 2015) (Kinkeade, J.); *Nguyen*, 2015 WL 1400564, at *13; *Nabarrette v. ProPetro Servs., Inc.*, 2016 WL 7616717, at *9 (W.D. Tex. Apr. 4, 2016); *Figueroa v. Harris Cuisine LLC*, 2019 WL 329578, at *7 (E.D. La. Jan. 25, 2019). Mr. Meine has not shown that he will have such a need simply because he is unable to reach a potential plaintiff by mail. The Court is approving Mr. Meine's unopposed request to contact potential plaintiffs by email and text message in addition to traditional mail. Until he shows that using these other avenues of communication is futile, production of partial social security numbers is unnecessary. *Cf. Figueroa*, 2019 WL 329578, at *7; *Clarke v. Pei Wei Asian Diner, LLC*, 2020 WL 7122861, at *2 (N.D. Tex. Dec. 4, 2020) (Godbey, J.).

Defendants make a similar necessity objection to producing emergency contact information for potential plaintiffs, but the Court finds this objection moot. The Court understands Mr. Meine to request contact information for potential plaintiffs themselves and not for their family or acquaintances. *See* Doc. No. 30 at 18.

## 2. Notice to Potential Plaintiffs

The Court next turns to the form Mr. Meine wishes to send to potential plaintiffs to notify them of this collective action, as well as the procedures Mr. Meine proposes for distributing the form. The Court's goal is to ensure that the notice provided to potential plaintiffs is accurate, contains the information they need to make an informed decision about whether to join the collective action, and respects judicial

neutrality. *Arceo v. Orta*, 296 F. Supp. 3d 818, 825 (N.D. Tex. 2017) (Fitzwater, J.). With this goal in mind, the Court makes several modifications and clarifications to Mr. Meine's proposed notice plan.

### i. Notice Form

The Court considers the content of Mr. Meine's proposed notice form before addressing his proposed procedures for distributing the form in Section III.B.2.ii.

### a. Case Caption

The Court first approves Mr. Meine's request to include the caption for this case at the head of his notice form. While some courts have worried that inclusion of the caption in a notice connotes judicial approval of the noticed collective action, the Court does not share that concern here. *E.g.*, *Odenbaugh v. SND Operating, LLC*, 2017 WL 11666479, at *1 (E.D. Tex. Dec. 4, 2017); *Moreno v. Poverty Point Produce, Inc.*, 2007 WL 9736219, at *4 (S.D. Tex. Apr. 20, 2007). "[N]umerous courts in the Fifth Circuit have held that inclusion of the caption of the court in a notice does not undermine judicial neutrality," particularly where the notice states that the Court has not taken a position on the merits of the collective action. *Kalenga v. Irving Holdings, Inc.*, 2020 WL 2841396, at *5 (N.D. Tex. June 1, 2020) (Scholer, J.) (quoting *Arceo*, 296 F. Supp. 3d at 825); *see also Nabarrette*, 2016 WL 7616717, at *6; *Gronefeld v. Integrated Prod. Servs., Inc.*, 2016 WL 8673851, at *7 (W.D. Tex. Apr. 26, 2016). Mr. Meine's proposed notice contains such a statement. Doc. No. 30-1 at 1. In light of that statement, use

of the case caption in his notice does not suggest that the Court approves the merits of his collective action.

### b. Obligation to Testify

The Court approves in part and disapproves in part Defendants' request that Mr. Meine's notice inform potential plaintiffs they maybe be "called to testify at trial and be subject to cross-examination in open court." Doc. No. 42 at 20. Mr. Meine does not object to including language advising potential plaintiffs they may have to testify at trial, so the Court will require its inclusion. The Court agrees with Mr. Meine that including additional language concerning cross-examination is unnecessary. The Court expects potential plaintiffs to understand that the prospect they will have to testify comes with the prospect of cross-examination. There is no indication that the cross-examination required in this case is more extensive than potential plaintiffs will anticipate. Defendants also fail to cite any authority for requiring a cross-examination advisory, and there is some authority against it. *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, 2011 WL 2207517, at *5 (S.D.N.Y. June 6, 2011). Under these circumstances, the Court will not require Mr. Meine to give such an advisory.

### c. Taxable Costs

The Court will require Mr. Meine to disclose in his notice that potential plaintiffs may be liable for a share of taxable costs if Defendants prevail in this case. Courts have divided over the propriety of such a disclosure. *Santinac v. Worldwide Lab. Support of Ill., Inc.*, 107 F. Supp. 3d 610, 618 (S.D. Miss. 2015). The Court agrees with the

authorities holding that disclosure of potential liability for taxable costs may "be necessary for someone to make an informed decision about whether to join" a collective action. *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 524 (N.D. Tex. 2014) (Fitzwater, C.J.); *Santinac*, 107 F. Supp. 3d at 618; *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 375 (N.D.W. Va. 2012); *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 207 (W.D. Pa. 2014). The Court trusts the parties can agree on appropriate language for this disclosure. If Mr. Meine arranges for payment of taxable costs by someone other than the potential plaintiffs, he may omit the disclosure from his notice. *See Miller v. MV Transp., Inc.*, 331 F.R.D. 104, 114 (W.D. Tex. 2019).

### d. Defendants' Counsel's Contact Information

The Court denies Defendants' request to include their counsel's contact information in Mr. Meine's notice. Defendants fail to explain why giving their counsel's contact information to potential plaintiffs would facilitate more efficient and accurate notice of this collective action. *See Wingo v. Martin Transp., Inc.*, 2018 WL 6334312, at *8 (E.D. Tex. Dec. 5, 2018); *Wade v. Furmanite Am., Inc.*, 2018 WL 2088011, at *9 (S.D. Tex. May 4, 2018). Absent some such reason for including counsel's contact information in the notice, the inclusion appears to increase the likelihood of inappropriate communications between counsel and potential plaintiffs without compensating advantages. *See Behnken*, 997 F. Supp. 2d at 525; *Sterling v. Greater Hous. Transp. Co.*, 2021 WL 5155683, at *3 (S.D. Tex. Sept. 14, 2021) (Rosenthal, C.J.).

### e.  Relationship with Named Plaintiff

The Court grants Defendants' request to add language to Mr. Meine's notice about the binding effect of Mr. Meine's decisions on potential plaintiffs who join this action.  Doc. No. 42 at 20.  Mr. Meine does not oppose this addition.  After reviewing Mr. Meine's notice and consent forms, the Court believes that the disclosure approved in *Gjurovich v. Emmanuel's Marketplace, Inc.*, modified as follows, is appropriate:

> If you sign and return the Consent to Become Party Plaintiff form attached to this Notice, you are agreeing to enter an agreement with Plaintiff's counsel concerning attorney's fees and costs and to designate Plaintiff as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the negotiation of a settlement of your claims, and all other matters pertaining to this lawsuit.

282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003) (Court's alterations not indicated); *Gayle v. United States*, 85 Fed. Cl. 72, 82 (2008) (approving similar language).  Mr. Meine must substitute this disclosure for the first sentence of the third paragraph of the third section of his proposed notice, which summarizes some terms of the consent form.

The Court directs Mr. Meine to conform the title of the consent form ("Consent to Join Collective Action and Be Represented by Morgan and Morgan P.A.") to the title used to reference the form in the notice ("Consent to Become Party Plaintiff") or vice-versa.

### f.  Corrections

The Court lastly orders several corrections to Mr. Meine's notice.  Most of these corrections Defendants proposed without objection from Mr. Meine.  The unopposed

corrections comprise minor adjustments to the procedural history and description of Mr. Meine's allegations presented in the "Introduction to the Case" section of the notice. Doc. No. 42 at 19–20. In addition to these corrections, Mr. Meine must revise the definition of the collective presented in the notice to reflect the shortened collective action period fixed in this opinion. *Supra* Section III.A.1. Mr. Meine should also correct his misspelling of the undersigned's name. Doc. No. 30-1 at 1.

### ii. Notice Procedures

Having reviewed the content of Mr. Meine's proposed notice form, the Court now considers his plan for distributing the form to potential plaintiffs.

### a. Workplace Posting

The parties first dispute whether Defendants should have to post a notice of this action at TCH's Dallas club, where Mr. Meine worked. Doc. No. 30 at 16; Doc. No. 42 at 16–17. The Court conditionally approves the posting.

Allowing a notice at the club together with distribution of the notice by mail, email, and text message will likely increase awareness of this collective action among potential plaintiffs. *See Kibodeaux v. A&D Ints., Inc.*, 579 F. Supp. 3d 896, 911 (S.D. Tex.), *vacated on other grounds sub nom. In re A&D Ints., Inc.*, 33 F.4th 254 (5th Cir. 2022); *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 135 (S.D.N.Y. 2022); *Gomez v. Mi Cocina Ltd.*, 2015 WL 13852378, at *7 (N.D. Tex. Apr. 23, 2015) (Solis, J.). This favors the notice.

The Court nonetheless permits the notice only with a caveat.  Defendants correctly observe that posting the notice in the Dallas club is likely to reach an unusually large number of employees who are not potential plaintiffs because of turnover after the end of the collective period, which closed over eighteen months ago.  Doc. No. 42 at 17; *cf. Leyva v. 35 Bar & Grill, LLC*, 2015 WL 5751638, at *8 (W.D. Tex. Sept. 22, 2015) (rejecting proposed posting that would not reach any potential plaintiffs).  The Court believes that Mr. Meine can mitigate this problem with a clear disclosure in his notice.  If he wishes Defendants to post a notice in the Dallas club, he must amend the first paragraph of the notice to include a prominent statement that the notice concerns only card dealers employed by TCHDallas2, LLC d/b/a Texas Card House Dallas between October 1, 2020 and December 24, 2022.  Defendants may post the notice in an area of the club with limited or no customer traffic so long as dealers regularly visit that area.  *See Kibodeaux*, 579 F. Supp. 3d at 911; *Hollis v. R & R Rests., Inc.*, 2022 WL 1303263, at *7 (D. Or. May 2, 2022).

### b.  Reminder Notices

The Court denies Mr. Meine's request to send reminder notices to potential plaintiffs thirty days after sending initial notices to them.  Doc. No. 30 at 17.  Although courts have disagreed about the propriety of reminder notices, many courts have allowed them only if the named plaintiff shows some need for the reminders.  *See, e.g.*, S*antinac*, 107 F. Supp. 3d at 619; *Kalenga*, 2020 WL 2841396, at *5; *Odenbaugh*, 2017 WL 11666479, at *4; *Figueroa*, 2019 WL 329578, at *6; *Reyes v. Bona 1372, Inc.*, 2017

18

WL 5148367, at *11 (E.D. Tex. Oct. 17, 2017), *rep. & rec. adopted*, 2017 WL 5147182 (E.D. Tex. Nov. 6, 2017).  The Court adopts this approach and finds that Mr. Meine has not provided any reason to think reminder notices are needed here.  He points to nothing in the record in support of his request to send reminders.

### c. Third-Party Administrator

The Court approves Mr. Meine's request for discretion to retain a third-party administrator who can assist in distributing notice of this action.  Doc. No. 30 at 15. Defendants do not oppose this request outright but ask that any third-party administrator send out all notices simultaneously and allow Defendants to review signed consents to join this collective action.  Doc. No. 42 at 21.  Since Mr. Meine has not responded to this supplementary proposal, the Court approves it.

### d. Transmittal Messages

The Court concludes its discussion of Mr. Meine's proposed notice procedures by approving Defendants' request to "review, revise, and object to" the transmittal messages accompanying notice and consent forms sent by email and text message.  Doc. No. 42.  Mr. Meine does not oppose this request.  The Court clarifies that Defendants may propose revisions but may not impose them unilaterally.

### 3. Consent Form

With the necessary revisions to Mr. Meine's notice plan clarified, the Court considers revisions to the form Mr. Meine wants to give potential plaintiffs to record their consent to join this action.  Defendants' sole objection to this form is that it lacks a

line for potential plaintiffs to acknowledge that they "may be financially responsible for taxable courts costs" if they "do not prevail in this lawsuit." Doc. No. 42 at 20. The Court overrules this objection. *See Dunkel*, 304 F.R.D. at 207 ("[C]ourt costs language will not be included in the Opt–In Consent Form.").

The Court sees no need for potential plaintiffs to affirmatively acknowledge that they may be liable for costs. The Court has already ordered Mr. Meine to include an advisory about costs in his proposed notice to potential plaintiffs. *Supra* Section III.B.2.i.c. Potential plaintiffs presumably will read and understand that advisory.

## C. Tolling

Having certified Mr. Meine's proposed collective and considered Mr. Meine's plan for sending notice and consent to join forms to potential plaintiffs, the Court lastly addresses Messrs. Meine and Guadalupe's motion to equitably toll the statute of limitations for the potential plaintiffs. Because Messrs. Meine and Guadalupe's proffered reasons for tolling are insufficient, the Court denies the motion.

The FLSA imposes a two-year statute of limitations for ordinary violations and a three-year statute of limitations for willful violations. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016); 29 U.S.C. § 255(a). The statute of limitations continues to run for a potential plaintiff in a collective action until she files a written consent to join the action. 29 U.S.C. § 256(b). Since Mr. Meine is pursuing a collective action involving claims stretching back nearly four years—to 2020—this means that some of the claims are facially untimely. Doc. No. 30 at 1.

Messrs. Meine and Guadalupe's proposed solution is equitable tolling.  "Equitable tolling is a narrow exception [to the statute of limitations] that should be applied sparingly.  For this narrow exception to apply, a plaintiff must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) (per curiam) (citations and internal quotation marks omitted).  Most courts agree that the FLSA's statute of limitations is subject to equitable tolling.  *E.g.*, *Miller*, 331 F.R.D. at 114; *Burrell v. Staff*, 60 F.4th 25, 48 (3d Cir.), *cert. denied sub nom. Lackawanna Recycling Ctr., Inc. v. Burrell*, 143 S. Ct. 2662 (2023); *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 188 (6th Cir. 2008).

Whether it is appropriate to resolve equitable tolling questions in the present posture of this case is a matter of greater doubt.  The ruling Messrs. Meine and Guadalupe request would extend the benefit of equitable tolling to individuals who have not opted into this suit, have not requested relief from the statute of limitations, and may never request such relief.  Doc. No. 31 at 1.  Numerous courts have questioned the propriety of conferring unasked-for boons or burdens on hypothetical opt-in plaintiffs.  *E.g.*, *United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986); *Bah v. Enter. Rent-A-Car Co. of Bos., LLC*, 560 F. Supp. 3d 366, 371–72 (D. Mass. 2021); *Keller v. El Dorado Oil & Gas, Inc.*, 2023 WL 8002681, at *8 (S.D. Miss. Apr. 10, 2023); *Calloway v. AT&T Corp.*, 419 F. Supp. 3d 1031, 1037 (N.D. Ill. 2019); *Lescinsky v. Clark Cnty. Sch. Dist.*, 539 F. Supp. 3d 1121, 1130–31 (D. Nev. 2021).  This Court will not pass

21

on the availability of equitable tolling to individual, unidentified potential plaintiffs. *See Calloway*, 419 F. Supp. 3d at 1032 ("[T]he Court denies the motion for *en masse* equitable tolling, but does so without prejudice to individual employees later arguing that their specific circumstances justify tolling."). Assuming it is proper to consider collective-wide equitable tolling, the Court holds only that Messrs. Meine and Guadalupe have not presented a basis for such relief in their pending motion.

Messrs. Meine and Guadalupe's motion is missing evidence satisfying equitable tolling's extraordinary circumstances requirement. To explain why potential plaintiffs have been unable to assert their claims during the FLSA's limitations period, Messrs. Meine and Guadalupe point only to Defendants' filing of a motion to dismiss and the Court's expenditure of time resolving Mr. Meine's certification motion. Doc. No. 32 at 8–9; Doc. No. 48 at 4. A motion to dismiss is an ordinary incident of litigation, not an extraordinary circumstance. *See English v. Tex. Farm Bureau Bus. Corp.*, 2019 WL 5191832, at *3 (W.D. Tex. Oct. 15, 2019); *Robinson v. RWLS, LLC*, 2017 WL 1535072, at *2 (W.D. Tex. Mar. 14, 2017); *Morgan v. Rig Power, Inc.*, 2015 WL 6506953, at *5 (W.D. Tex. Oct. 27, 2015). The same is true of judicial deliberation. *See McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808–09 (S.D. Tex. 2010) (Rosenthal, J.); *Roberts v. Baptist Healthcare Sys., LLC*, 2022 WL 4493733, at *3 (E.D. Tex. Sept. 20, 2022), *rep. & rec. adopted*, 2022 WL 4491070 (E.D. Tex. Sept. 26, 2022); *Cervantez v. TDT Consulting, LLC*, 2019 WL 3948355, at *12 (N.D. Tex. July 22, 2019) (Horan, M.J.), *rep. & rec. adopted*, 2019 WL 3947585 (N.D. Tex. Aug. 21, 2019)

22

(Scholer, J.).  Considered together, these circumstances do not justify equitable tolling for the entire collective.

## IV.   CONCLUSION

The Court **GRANTS** Mr. Meine's Motion to Certify and authorizes Mr. Meine to distribute notice of this action to the following collective: "All card dealers employed by TCHDallas2, LLC d/b/a Texas Card House Dallas at any time from October 1, 2020 to December 24, 2022, who were subject to TCH Dallas' mandatory tip pool."  The Court **DENIES** Mr. Meine's Motion to Toll the statute of limitations.

Within fourteen days of the entry of this order, Defendants **SHALL PRODUCE** to Mr. Meine, in a computer-readable format, the following contact information for each potential plaintiff in the certified collective: name, address, telephone number, email address, and dates and corresponding locations of employment.

The Court **APPROVES** Mr. Meine's proposed form notice of this action, his proposed procedures for distributing notice, and his proposed form consent to join this action with modifications.  Mr. Meine **SHALL MODIFY** the forms and procedures in accordance with this opinion.  Such modifications include modifications proposed in

Defendants' briefing, Doc. No. 42, that are consistent with this opinion and that

Mr. Meine did not oppose in his own briefing.

     **SO ORDERED.**

     Signed July 9th, 2024.

                              ED KINKEADE
                              UNITED STATES DISTRICT JUDGE